UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ELA Medical, Inc.,

          Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-3027 ADM/JJG

Advanced Cardiac Consultants, Inc.,
Shawn DeRosa, Albert Barrocas, and
Scott Mathison,

          Defendants.

_____

Kerry L. Bundy, Esq., Jesseca R.F. Cockson, Esq., Jacob L. Frey, Esq., Faegre & Benson LLP, Minneapolis, MN; Thomas F. Carlucci, Esq., Foley & Lardner, LLP, San Francisco, CA, on behalf of Plaintiff.

John D. Thompson, Esq., Leonard B. Segal, Esq., Oberman Thompson & Segal, LLC, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On April 19, 2010, the undersigned United States District Judge heard oral argument on Defendants Advanced Cardiac Consultants, Inc., ("ACC"), Shawn DeRosa, Albert Barrocas, and Scott Mathison's ("DeRosa," "Barrocas," and "Mathison," respectively, or the "individual defendants") (collectively "Defendants") Amended Motion to Dismiss, for a More Definite Statement, and/or Transfer [Docket No. 15].[1] For the reasons set forth below, Defendants' Motion is denied.

---

[1] Defendants previously moved to dismiss Plaintiff ELA Medical Inc.'s Complaint [Docket No. 1] under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim or, in the alternative, to require Plaintiff to provide a more definite statement of its allegations under Rule 12(e). The parties stipulated to Plaintiff filing an amended complaint. After Plaintiff filed its Amended Complaint [Docket No. 31], Defendants withdrew their motion to dismiss for failure to state a claim.

## II. BACKGROUND[2]

Plaintiff ELA Medical, Inc. ("ELA"), a Delaware corporation with its principal place of business in Colorado and offices in Minnesota distributes pacemakers, defibrillators, and related products. Am. Compl. [Docket No. 31] ¶ 1. ACC is a Florida corporation that, through its principals, DeRosa, Barrocas, and Mathison, all of whom reside in Florida, sells pacemakers, defibrillators, and related products in southern Florida. Id. ¶¶ 2-6. In 2004, ELA and ACC entered into an Independent Sales Representative Agreement (the "Agreement"), whereby ACC became the exclusive sales force for ELA's products in south Florida. Id. ¶ 10. Each principal signed a personal guaranty of ACC's performance of its obligations under the Agreement and agreed to be individually and personally bound by the terms of the Agreement. Id. The Agreement included a mandatory forum selection and choice of law clause that provides:

> The law of the State of Minnesota shall govern this Agreement in all respects. Any disputes arising out of or relating to this Agreement, including but not limited to any alleged breach of this Agreement, shall be venued in the state or federal courts in the State of Minnesota and the parties hereby expressly consent to the exercise of personal jurisdiction over them by such courts.

Id., Ex. A.

In September, 2006, the United States Office of Inspector General served ELA with a subpoena and initiated an investigation of ACC for alleged violations in South Florida of the Anti-Kickback Statute which prohibits unauthorized gifts to business associates (i.e. physicians). Id. ¶ 23. In a letter agreement, ACC reaffirmed its obligations to ELA and ensured its compliance with ELA's Code of Conduct and Policies and Procedures, which precluded gifts to

---

[2] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

business associates. Id. ¶¶ 20, 24. In response to the subpoena, ELA performed an internal investigation of ACC and its sub-representatives. Based upon the results of its investigation ELA terminated the Agreement in November 2007 for gross misconduct, violation of federal laws, failure to comply with ELA's Code of Conduct, and other breaches of the Agreement. Id. ¶ 32. In May 2006, Relator Tania Lee filed a qui tam action against ELA and various hospitals, physicians, DeRosa, and Mathison, alleging violations in South Florida of the False Claims Act and the Anti-Kickback Statute. Id. ¶ 34. As a result of Defendants' alleged misconduct, ELA claims to have incurred significant expenses in defending itself in the government's investigation and in Relator Lee's action. Id. ¶ 36. ELA filed suit against Defendants for breach of contract, indemnification, and breach of personal guaranty.

## III. DISCUSSION

### A. Motion to Dismiss

#### 1. Personal Jurisdiction

Defendants first move to dismiss this action for lack of personal jurisdiction. Because Defendants are residents of Florida, jurisdiction is proper only if Minnesota's long-arm statute is satisfied and the exercise of personal jurisdiction does not offend due process. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003). As Minnesota's long-arm statute extends jurisdiction over nonresident defendants to the fullest extent allowed by the Due Process Clause, the only determination to be made is whether the exercise of personal jurisdiction violates due process considerations. Guinness Import Co., v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998). Due process requires minimum contacts with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

ELA argues that the forum selection clause in the Agreement constitutes Defendants' consent to personal jurisdiction in Minnesota. Eighth Circuit precedent establishes a party may consent to jurisdiction when it signs a contract containing a forum selection clause. St. Paul Fire & Marine Ins. Co. v. Courtney Enters., 270 F.3d 621, 624 (8th Cir. 2001). Moreover, a valid forum selection clause satisfies due process concerns. Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001). Defendants respond that because DeRosa, Barrocas, and Mathison were not parties to the Agreement, they did not expressly consent to jurisdiction in Minnesota.[3] In addition, Defendants argue that the forum selection clause is invalid and unenforceable.

As to Defendants' first argument, in Arkansas Rice Growers Cooperative Ass'n v. Alchemy Industries, Inc., 797 F.2d 565 (8th Cir. 1986), the Eighth Circuit determined that nonresident guarantors of an allegedly breached contract had insufficient contacts with the forum state to justify the exercise of personal jurisdiction. There, the court concluded that neither "[t]he mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation" nor "the guarantors' status as shareholders in . . . the debtor corporation" were sufficient to establish the necessary minimum contacts. Id. at 573. The court expressly distinguished cases where

> there has been substantive identity of the guarantors and the corporation whose obligation they guarantee, evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals, or a

---

[3] Defendants do not appear to argue that ACC did not expressly consent to Minnesota jurisdiction or that the forum selection clause is not valid as to ACC. Therefore, the ensuing discussion is limited to whether DeRosa, Barrocas, and Mathison individually are subject to the Agreement's consent to jurisdiction.

4

> provision in the guarantee contract or the underlying contract stating that the law of the forum state would control.

Id. at 573-74 (citations omitted).

Two courts in this district have considered the exceptions anticipated by the circuit court in Arkansas Rice Growers, and have found the factual circumstances of those cases warranted the exercise of personal jurisdiction over nonresident guarantors. See LOL Fin. Co. v. F.J. Faison, Jr. Revocable Trust, Civ. No. 09-741, 2009 WL 3381298, at *6 (D. Minn. Oct. 16, 2009); Residential Funding Corp. v. Anvil Funding Corp., No. Civ. 04-3043, 2005 WL 1323940, at *4 (D. Minn. June 3, 2005).

Here, too, the pertinent distinctions described in Arkansas Rice Growers are present. DeRosa, Barrocas, and Mathison collectively constitute ACC's ownership and management. In addition, the individual defendants participated in the negotiation of the Agreement and, as ACC's sole owners, they directly benefitted from the sales realized from the Agreement. DeRosa, Barrocas, and Mathison's relationship with ACC is more than that of passive guarantors; these individual defendants were the primary beneficiaries of favorable business transactions procured under the Agreement. Thus, there appears to be substantive identity between the individual defendants and ACC. See LOL Finance Co., 2009 WL 3381298, at *6 (concluding that substantive identity exists where the guarantors constitute a great majority of the ownership and management of the corporation whose obligation they guarantee and where the guarantors would realize a significant portion of the profit from the contract, the performance of which they guaranteed).

Additionally, the personal guaranty and the underlying agreement were signed on the

same day by the same representative rather than months apart as in Arkansas Rice Growers. This temporal connection supports the assertion that the guarantees served as inducement for the underlying contract. See Bradley v. MDC Credit Corp., Civ. No. 09-5032, 2009 WL 2745899, at *5 (D.S.D. Aug. 26, 2009). Further, both documents were signed by Mathison, and both contracts relate to the same business opportunity. Thus, the evidence supports that ELA would not have entered into the Agreement without the personal guarantees. See id.

Finally, the underlying contract that DeRosa, Barrocas, and Mathison personally guaranteed explicitly included a Minnesota forum selection clause. Under these circumstances, the Court finds that the forum selection clause applies to DeRosa, Barrocas, and Mathison for purposes of determining whether they consented to personal jurisdiction in Minnesota.

### 2. Validity of the Forum Selection Clause

Defendants next argue that the forum selection clause is invalid because Minnesota is a seriously inconvenient forum for trial, the contract is one of adhesion, and the forum selection clause is unreasonable. Forum selection clauses are generally presumed to be valid, but they will not be enforced if they are unreasonable or if they constitute contracts of adhesion. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589-90 (1991). A court should invalidate a forum-selection clause only if (1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; or (3) the agreement is otherwise unreasonable. Hauenstein & Bermeister, Inc. v. Met-Fab Indus., 320 N.W.2d 886, 890 (Minn. 1980); Interfund Corp. v. O'Byrne, 462 N.W.2d 86, 88 (Minn. Ct. App. 1990).

#### a. Seriously Inconvenient Forum

A forum is a seriously inconvenient place for trial only if a party would be "effectively

deprived of a meaningful day in court" as a result of enforcing the forum selection clause. Hauenstein & Bermeister, 320 N.W.2d at 890 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 19 (1972)). This defense is usually not successful "because the presumption is that consideration was received at the time of contracting for the alleged inconvenience." Id. Defendants argue that enforcement of the clause is seriously inconvenient because it will result in duplicative litigation of similar claims in Minnesota and Florida. However, Defendants' claims against ELA in Florida were dismissed by the district court. Defs'. Mem. in Supp. of Mot. to Dismiss at 3. Because there are no claims currently pending before the Florida district court, there is no duplicative litigation in Minnesota. In addition, Defendants argue, none of the witnesses or evidence is in Minnesota. But courts have consistently stated that "[l]ocation and convenience of witnesses are generally not considered a serious inconvenience." Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc., 646 N.W.2d 904, 909 (Minn. Ct. App. 2002) (quotation omitted); see also Interfund, 462 N.W.2d at 88 (noting that if a party's witnesses cannot travel to Minnesota, the party may use deposition testimony "without disadvantage"). Finally, other litigation costs, including the cost of sending evidence to Minnesota, were presumably contemplated when the parties negotiated the contract.

    **b.**    **Contract of Adhesion**

An adhesion contract "is drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere. It is a contract generally not bargained for, but which is imposed on the public for *necessary* service on a 'take it or leave it' basis." Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920, 924 (Minn. 1982) (internal citations omitted). Defendants argue that ELA had superior bargaining

7

power and sophistication. However, ACC, as a business entity, is presumed to approach business dealings with sophistication. See Hauenstein & Bermeister, 320 N.W.2d at 891. The record does not reflect that Defendants received inadequate compensation for signing the Agreement or the personal guaranty or that they lacked business sophistication. While ELA is a large corporation and ACC is relatively small, it appears that ACC, a seller of complex medical devices, is, nonetheless, a sophisticated company. Defendants have not demonstrated the great disparity in bargaining power that is required to prove that a contract is one of adhesion. See Schlobohm, 326 N.W.2d at 920. Finally, there is nothing to suggest the Agreement involves a public necessity.

        c.        **Otherwise Unreasonableness of the Contract**

A forum selection clause is otherwise unreasonable if enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. Interfund, 462 N.W.2d at 89. Judicial economy and the prevention of multiple actions on similar issues are policies which can render a forum selection clause patently unreasonable. Id. Defendants repeat their argument that ELA is a large corporation with significant revenue, while Defendants are individual shareholders in a small company that is now defunct. This fact is not relevant to a determination of whether the contract is otherwise unreasonable. Defendants further argue that although their case against a third party in Florida was dismissed, they *may* pursue another action there. The mere possibility that Defendants may pursue a related claim in Florida is insufficient to render the forum selection unreasonable. There is no support for the argument that the enforcement of the forum selection clause would contravene a strong public policy.

For the reasons stated above, the forum selection clause is valid and enforecable as to

ACC and the individual defendants. Due process concerns are satisfied through ACC's contractual consent to personal jurisdiction in Minnesota. See Dominium, 248 F.3d at 726. Furthermore, the obligations that DeRosa, Barrocas, and Mathison personally guaranteed satisfy the factors set forth in Arkansas Rice Growers. Thus, personal jurisdiction exists over the parties.

**B.      Motion to Transfer**

Alternatively, Defendants contend the Court should transfer the case under 28 U.S.C. § 1404(a) to the Southern District of Florida. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In analyzing a motion to transfer under § 1404(a), a district court employs a three-factor balancing test that considers "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). These factors are not exclusive, and a district court's decision on a motion to transfer "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id.

Courts must be cognizant, however, that transfer motions "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982). A "heavy" burden rests with the movant to demonstrate why a case should be transferred. E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions L.L.C., Civ. No. 06-5015, 2007 WL 2263927, at *5 (D. Minn. Aug. 6, 2007) (adopting magistrate judge's report and recommendation). To satisfy that heavy burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor. Radisson

Hotels Int'l, Inc. v. Westin Hotel Co., 931 F.Supp. 638, 641 (D. Minn. 1996).

### 1. Convenience of the Parties

By virtue of the valid forum selection clause, Defendants have waived their right to assert its own inconvenience of litigating in Minnesota as a reason to transfer the case. Indep. Stationers, Inc. v. Vaughn, No. IP 99-0127, 2000 WL 1449854, at *7 (S.D. Ind. Jan. 3, 2000); Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989) ("a valid forum-selection clause may waive a party's right to assert his own inconvenience as a reason to transfer a case"); Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757-58 (3d Cir. 1973) (explaining that the convenience of the parties "is properly within the power of the parties themselves to affect by a forum-selection clause."). Accordingly, Defendants' transfer motion will be resolved by weighing the interest of justice and the convenience of the witnesses. RK Dixon Co. v. Dealer Mktg. Servs., Inc., 284 F. Supp. 2d 1204, 1216 n.17 (S.D. Iowa 2003) ("[A] valid forum-selection clause may waive a party's right to assert his own convenience as a reason to transfer a case, but district courts still must consider whether the interest[s] of justice or the convenience of witnesses require transferring a case.") (quotations omitted) (second alteration in original); Midwest Mech. Contractors, Inc. v. Tampa Constructors, Inc., 659 F. Supp. 526, 532 (W.D. Mo. 1987) ("By a valid forum selection clause the parties have only waived any objection . . . to the selected forum. [Their agreement] cannot foreclose consideration of other § 1404(a) factors which implicate public or third-party interests. Thus, the convenience of the witnesses and the interests of justice must still be considered.").

### 2. Convenience of the Witnesses

Witnesses who are employees of a party are not a "paramount concern . . . because it is

10

generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." LeMond Cycling, Inc. v. Trek Bicycle Corp., Civ. No. 08-1010, 2008 WL 2247084, at *3 (D. Minn. May 29, 2008). Thus, it is the inconvenience to non-party witnesses that is especially relevant. Advanced Logistics Consulting, Inc. v. C. Enyeart LLC, Civ. No. 09-720, 2009 WL 1684428, at *5 (D. Minn. June 16, 2009). "[T]he preference of courts for live testimony as opposed to depositions" is also a relevant consideration. Graff v. Qwest Commc'ns Corp., 33 F.Supp.2d 1117, 1121 (D. Minn. 1999).

The key non-party witnesses identified in the motion papers are located in South Florida and some witnesses are scattered throughout the country. None of the non-party witnesses appears to reside in Minnesota. Accordingly, this factor weighs in favor of transfer.

### 3.    Interests of Justice

When evaluating whether the interests of justice warrant transfer, courts typically consider such factors as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, 119 F.3d at 696.

Defendants argue that ELA, as a large corporation, is better suited to bear the costs of litigating in a distant forum. Defendants further argue that Florida has a strong connection to the facts of this litigation, as most of the events giving rise to this litigation occurred in Florida. On the other hand, ELA argues that since Minnesota law applies to this dispute, Minnesota courts are in a better position than the federal courts in Florida in applying this law. Further, ELA argues that its choice of forum is entitled to at least some deference. On balance, the Court finds

the interests of justice factor favors ELA.

As discussed above, the Court finds that the forum selection clause is valid and enforceable. In addition, by virtue of signing the Agreement, Defendants are foreclosed from arguing their own inconvenience as a reason for transfer. The convenience of the witnesses factor favors transfer and the interests of justice factor favors retaining the case in Minnesota. Having considered all the relevant factors, the Court concludes that the balance does not weigh strongly in favor of transferring this action. The parties negotiated an enforceable forum selection clause, rendering venue in Minnesota to be appropriate. The Court declines to create a contract for which neither party bargained nor to eviscerate a contract for which sufficient bargain was made.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Amended Motion to Dismiss, for a More Definite Statement, and/or Transfer [Docket No. 15] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 1, 2010